IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID G. HAMILTON and ALEXANDRA L. HAMILTON | : CIVIL ACTION : NO. 18-5417 |
| v. | : : (Bankr. No. 16-18326) : (Adversary No. 17-00199) |
| PENNSYLVANIA HOUSING FINANCE AGENCY, Homeowners Emergency Mortgage Assistance Program | : : : |

## MEMORANDUM OPINION

Savage, J.                                                                   March 5, 2020

In this appeal from the Bankruptcy Court's decision declining to reorder the priority of a junior lienholder's interest over the modified portion of a senior lienholder's interest, Pennsylvania Housing Finance Agency ("PHFA") asks us to apply either the equitable subordination doctrine or section 7.3 of the Restatement (Third) of Property (Mortgages). These rules allow a court to subordinate a senior lien to a junior creditor's lien when material modifications to the senior lien "materially prejudice" the junior lienholder's interests.

The parties do not dispute the material facts or the state of the law regarding lien priority. What they disagree about is whether we should announce a new rule in Pennsylvania that the equitable subordination doctrine or section 7.3 of the Restatement (Third) of Property (Mortgages) applies. We decline to do so. Because no Pennsylvania state court or federal court in the Third Circuit has applied either rule to alter the priority of mortgage liens, we hold that the Bankruptcy Court did not commit an error of law when it refrained from applying the equitable subordination doctrine. Therefore, we shall affirm.

**Background**

The Debtors purchased their primary residence located in Brookhaven, Pennsylvania ("the property") on June 25, 2002, as reflected by deed recorded on July 5, 2002. In December of 2004, they executed a note secured by a thirty-year mortgage given to EverBank in the original principal amount of $145,000.00 with a fixed 5.75% annual interest rate and a maturity date of January 1, 2035.[1] After making timely monthly payments of $846.18 for approximately five years, the Debtors defaulted under the mortgage. In May 2010, they received an Act 91 Notice[2] from the lender informing them of their right to apply for a Homeowner's Emergency Mortgage Assistance ("HEMAP") loan to cure their mortgage delinquency and prevent foreclosure.[3]

On November 30, 2010, after the Debtors were approved for HEMAP assistance, they entered into a mortgage agreement with PHFA, which administers HEMAP.[4] Under the agreement, the Debtors gave PHFA an open-ended mortgage (essentially a home equity line of credit) with no maturity date in the principal amount of $51,000.00 with interest accruing at a rate of 5.25% to secure PHFA's advances to the lender to satisfy the delinquent mortgage obligations and future advances (until April 2013) to maintain

---

[1] Note (A.10–12); Mortgage (A.13–27). On December 17, 2004, the mortgage was recorded against the property in favor of Mortgage Electronic Registration Systems ("MERS") as nominee for Everbank. Adversary Compl. ¶ 3 (A.1).

[2] The Pennsylvania Homeowner's Emergency Assistance Act, 35 P.S. §§ 1680.401c–1680.412c ("Act 91"), requires the lender to notify residential homeowners whose mortgages are in default that they are eligible to apply for emergency mortgage assistance to prevent foreclosure. *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 188 & n.1 (Pa. 2019) (citations omitted).

[3] PHFA estimates that the unpaid principal balance on the mortgage at that time was approximately $135,000.00. PHFA's Br. at 4 & n.2.

[4] Mortgage (A.47–49). The mortgage was recorded on December 3, 2010.

2

their mortgage obligations.[5] By the time the Debtors filed bankruptcy in 2016, PHFA had expended $18,263.18 to the lender on their behalf to cure the outstanding arrearages. The Debtors made no loan payments in the meantime.[6]

On March 21, 2012, the mortgage was sold and assigned to JPMorgan Chase Bank National Association ("JPMorgan").[7] On July 27, 2012, after the Debtors failed to make their mortgage payments, JPMorgan filed a complaint in mortgage foreclosure.[8] On May 6, 2013, judgment in the amount of $139,447.26 was entered against them.[9] As a result of a settlement of the foreclosure action, JPMorgan moved to vacate the judgment and discontinue the case without prejudice.[10] Effective September 1, 2013, the parties entered into a loan modification agreement, which was not recorded.[11]

Less than a year later, JPMorgan filed another complaint in foreclosure seeking a judgment in the amount of $152,200.49 for unpaid principal, interest, taxes and fees.[12]

---

[5] Mortgage (A.47–49); Note (A.51). The Debtors were obligated to make monthly payments on the HEMAP loan in the amount of $25.00 beginning January 1, 2013. PHFA's Proof of Claim (A.42–46).

[6] PHFA's Br. at 4-5; PHFA's Proof of Claim (A.42–46).

[7] Assignment (A.28–29); Adversary Compl. ¶ 5 (A.2). The assignment was recorded three weeks later. *Id.*

[8] Docket in *JPMorgan Chase Bank Nat'l Ass'n v. Hamilton*, No. 12-6458 (CCP Del. Cty.).

[9] *Id.*

[10] *Id.*

[11] Compl. in Mortgage Foreclosure filed in *JPMorgan Chase Bank Nat'l Ass'n v. Hamilton*, No. 14-6976 (CCP Del. Cty.), ¶ 3 (A.85). Even though the loan modification agreement was not recorded and the Debtors have not provided the terms of the agreement, PHFA deduces that since the time the HEMAP loan was approved in 2010, the unpaid principal balance increased more than $13,000.00 and interest accrued at the same rate of 5.75%. PHFA's Br. at 5.

[12] Compl. in Mortgage Foreclosure filed in *JPMorgan Chase Bank Nat'l Ass'n v. Hamilton*, No. 14-6976 (CCP Del. Cty.) (filed Aug. 11, 2014). Two weeks after the complaint was filed, the mortgage was sold and assigned to Bayview Loan Servicing, LLC and M&T Bank became Bayview's loan servicer/agent. Assignment (A.30–32); Adversary Compl. ¶ 6 (A.2). Bayview currently holds the first mortgage on the property.

On March 18, 2015, judgment in the amount of $161,462.88 was entered against the Debtors.[13] After the property was listed for Sheriff's sale on July 17, 2015, the Debtors and Bayview, JPMorgan's assignee, entered into a loan modification agreement. Bayview withdrew its writ of execution and the judgment was vacated. Effective August 14, 2015, the agreement provided that $24,074.67 in unpaid accrued interest, costs and expenses were "added to the indebtedness under the terms of the Note and Security Instrument," creating a new unpaid principal balance of $172,464.87. The maturity date was extended twenty years, from January 1, 2035, to August 1, 2055. At the same time, the interest rate was lowered from 5.75% to 3.625%, and the monthly payments on the note were lowered to $681.10 from $846.18.[14]

Within a few months, the mortgage was in default for the fourth time. On June 13, 2016, Bayview filed a complaint in foreclosure against the Debtors. On August 11, 2016, a default judgment in the amount of $177,454.32 was entered.[15] On September 7, 2016, Bayview obtained a writ of execution listing the property for Sheriff's sale on December 16, 2016. The sale was stayed when the Debtors filed Chapter 13 bankruptcy on December 3, 2016.[16]

---

[13] March 18, 2015 Order in *JPMorgan Chase Bank Nat'l Ass'n v. Hamilton*, No. 14-6976 (CCP Del. Cty.). Three months later, Bayview obtained an amended judgment in the amount of $171,058.08. *See* June 30, 2015 Order.

[14] Loan Modification Agreement (A.34–38).

[15] Docket in *Bayview Loan Servicing, LLC v. Hamilton*, No. 16-5130 (CCP Del. Cty.) (filed June 13, 2016).

[16] *Id.*

### Bankruptcy Court Proceedings

In the bankruptcy action, Bayview filed a secured proof of claim in the amount of $189,065.68,[17] and PHFA filed a secured proof of claim in the amount of $18,263.18.[18] Six months after filing the bankruptcy action, the Debtors initiated an adversary action under 11 U.S.C. § 506(a) to determine the secured status of PHFA's mortgage. They claimed that PHFA's lien, the second mortgage on their property, was unsecured because it was junior to the first mortgage held by Bayview and the amount owed to Bayview exceeded the value of the Debtors' property.[19] They requested a determination that PHFA's lien is wholly unsecured and an order marking PHFA's second mortgage "satisfied."[20]

In response to the adversary complaint, PHFA asked the Bankruptcy Court to alter the priority of its lien with respect to the modified portion of Bayview's lien. Specifically, it requested the Bankruptcy Court find that the modified portions of Bayview's mortgage hold a subordinate position to PHFA's mortgage, rendering it secured.[21] PHFA noted that the 2015 loan modification with Bayview, which occurred after PHFA recorded its mortgage and without its knowledge or consent, increased the principal balance of the

---

[17] Bayview's Proof of Claim (A.4–7). The claim consisted of an unpaid principal balance of $171,306.83 and interest, fees and taxes in the amount of $17,758.85, and $21,578.12 in pre-petition arrears (amount necessary to cure the default). (A.7).

[18] PHFA's Proof of Claim (A.42–46). PHFA's claim consisted of an unpaid principal balance of $18,263.18 and $1,200.00 in pre-petition arrears. *Id.* (A.45). PHFA paid $11,823.15 to cure the Debtors' outstanding arrearages on the first mortgage and $300.00 for the loan closing fee. At a fixed annual interest rate of 5.25%, PHFA charged $6,140.00 in interest, making the total debt $18,263.18. Note (A.51).

[19] Adversary Compl. ¶¶ 2–4, 8–9 (A.1–2). The parties agree that the value of the Debtors' property at the time the bankruptcy petition was filed was $175,585. *See* PHFA's Br. at 2.

[20] Adversary Compl. ¶ 9 (A.2); Joint Pretrial Statement § D.(1.) (A.56).

[21] PHFA's Br. in Resp. to Adversary Compl. at 11 (A.78).

5

debt, capitalized arrearages and significantly extended the maturity date of the loan twenty years past the original maturity date. It argued that these terms materially modified Bayview's mortgage, substantially impairing and prejudicing the security of PHFA's mortgage.

PHFA contended that when it provided its mortgage assistance loan to the Debtors, it reasonably believed that its lien would be junior to a mortgage with a continually decreasing principal balance. Instead, as a result of the loan modification, the mortgage accrued compounding interest, additional principal and a longer loan life. It argued that the modifications substantially impaired and prejudiced its mortgage because: (1) increasing the principal balance resulted in a higher debt burden than it originally anticipated and absorbed any remaining equity in the property; (2) capitalizing arrearages caused additional interest to accrue on unpaid interest; and (3) extending the loan's maturity date twenty years nullified any benefit that may have resulted from the reduction of the interest rate.[22] It contended that allowing a senior lienholder "to continually increase the debt it is owed, particularly after it has actual notice of a junior lienor, without providing notice or obtaining consent through the acquisition of a subordination agreement," "eliminate[d] any reliance a junior creditor is able to place on the recorded mortgage documents of any prior lienholder."[23] This result, according to PHFA, contravenes the purpose of Pennsylvania recording statutes to place potential creditors on notice of the encumbrance and the extent of the creditor's interest. Additionally, PHFA argued that because the loan proceeds were paid directly to the lender and not the Debtors for

---

[22] *Id.* at 4–7 (A.71–74).

[23] *Id.* at 9 (A.76).

repayment of its loan, it would be inequitable for Bayview to collect the entire balance of its loan ahead of PHFA's mortgage or for its mortgage to be stripped of any security as a result of Bayview's later modifications. Asserting that the modifications to the first mortgage unfairly jeopardized the security of its junior mortgage, PHFA requested that the Bankruptcy Court determine that the modified portion of Bayview's mortgage holds a subordinate position to PHFA's mortgage.[24]

The Debtors argued that because no statute, regulation or case law in Pennsylvania requires senior lienholders to notify junior lienholders that they were entering into mortgage loan modifications with a borrower and Pennsylvania's recording statute does not require the recording of a mortgage loan modification, the court should not impose such a requirement. They contended that the loan modification did not materially or adversely affect PHFA's junior position. They also argued that as a matter of public policy, requiring senior lienholders to give notice of loan modifications to junior lienholders would adversely affect "countless" other borrowers and their ability to modify their mortgages.[25] The Debtors also argued that the modification did not actually adversely affect PHFA's junior position. They contended that the principal balance increased as a result of amounts previously owed by the Debtors, not because new funds were added to the principal balance. In other words, the same amounts would have been owed even if the loan modification had not taken place.[26]

---

[24] Answer to Adversary Compl. ¶ 8 (A.52-53); Joint Pretrial Statement § D.(1.) (A.56); PHFA's Br. in Resp. to Adversary Compl. at 4-7, 9, 11 (A.68, 71-74, 76, 78); Transcript of Sept. 18, 2018 Hearing ("Tr.") at 6:5–11, 7:5-25 – 8:1-10.

[25] Debtors' Br. (A.63-64, 66).

[26] Debtors' Reply Br. (A.112).

7

After a hearing, the Bankruptcy Court determined that PHFA's claim was wholly unsecured. It framed PHFA's request that the priority interests be reordered as an argument for applying section 7.3 of the Restatement (Third) of Property (Mortgages). Under section 7.3(b) of the Restatement, which embodies the principle of "equitable subordination" in the context of a modified senior mortgage, a court may subordinate a senior lien to a junior creditor's interest when material modifications to the senior lien "materially prejudice" the junior lienholder's interests.[27] The Bankruptcy Court found that no Pennsylvania state court or federal court in the Third Circuit had applied section 7.3 of the Restatement or the doctrine of equitable subordination in the context of altering the priority of mortgage liens. It noted that the Pennsylvania Commonwealth Court, in *Newcrete Products v. City of Wilkes-Barre*, 37 A.3d 7, 15 (Pa. Commw. Ct. 2012), "refused" to adopt the equitable subordination doctrine because no Pennsylvania court had applied it outside the context of federal bankruptcy proceedings. Accordingly, the Bankruptcy Court declined to apply the doctrine to this case.[28] It then concluded that the "modified mortgage retain[ed] priority over PHFA's second mortgage as to its entire proof of claim, including amounts added to principal as the result of loan modifications," and determined that the value of PHFA's interest in the Debtors' property and its allowed secured claim was zero.[29]

---

[27] PHFA did not expressly ask the Bankruptcy Court to apply section 7.3 of the Restatement in particular or the principle of equitable subordination in general. It mentioned section 7.3 once when discussing a case that cited it, and it made no reference to the equitable subordination doctrine. PHFA's Br. in Resp. to Adversary Compl. at 5 (A.72).

[28] Tr. at 7:5-25 – 9:1-13, 10:8-13, 11:18-25, 12:1-11; 13:14-21 (A.118-133).

[29] Nov. 30, 2018 Order (A.134).

## Standard of Review

The Bankruptcy Court made a legal determination. We review it *de novo*. *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020) (citing *Schepis v. Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 133 n.14 (3d Cir. 2017)).

## Discussion

PHFA appeals the Bankruptcy Court's decision "declin[ing] to alter the priority of [its] lien in relation to the modified portion of [Bayview's] lien" and determining that the lender was not required to provide notice to PHFA of the modifications to its mortgage.[30] It argues that the Bankruptcy Court should have reordered the priority of the liens to mitigate or eliminate the detrimental impact of the modifications to Bayview's senior lien on PHFA's junior lien.[31] It also argues that the Bankruptcy Court "erred in its determination that Lender's material modifications of its Mortgage did not have a prejudicial effect on Appellant's junior mortgage."[32] It requests that we reverse the Bankruptcy Court's decision and determine that PHFA's lien (1) was substantially impaired or unfairly prejudiced by the material modifications made to the first mortgage without PHFA's knowledge or consent to subordinate; (2) is superior to Bayview's

---

[30] PHFA's Br. at 2, 9.

[31] *Id.* at 7.

[32] *Id.* at 2. Notably, the Bankruptcy Court did not make that determination. Because it declined to apply the Restatement or the equitable subordination doctrine, it never made any determinations, whether in the form of factual findings or legal conclusions, about whether PHFA's lien was impaired or prejudiced by Bayview's modifications to its mortgage. As the Bankruptcy Court noted, "we will not, in fact, find that the modification prejudiced the PHFA. . . . [B]etter for me not to reach it when we had at least one Pennsylvania court look at this and decline to adopt it." Tr. at 12:1-7.

9

modified mortgage or, in the alternative, superior to the modified terms and amounts of Bayview's mortgage; and (3) is a secured claim against the Debtors' property.[33]

The Debtors argue that the Bankruptcy Court correctly declined to apply the equitable subordination doctrine and impose a notice requirement that is inconsistent with Pennsylvania law. They contend that until the Pennsylvania legislature or the Pennsylvania appellate courts so decide, PHFA is improperly trying to change Pennsylvania law.[34]

Philadelphia Unemployment Project ("PUP"), which filed an *amicus* brief in this matter,[35] urges us to affirm the Bankruptcy Court's decision. It states that it has an interest in preventing homeowners from being denied first mortgage loan modifications based on the existence of junior liens that would otherwise not be elevated in priority by the modification.[36] It argues that "the paradigm set up by 11 U.S.C. §§ 506(a) and (d)" and the holding in *In re McDonald*, 205 F.3d 606 (3d Cir. 2000), which states that "in a chapter 13 bankruptcy, junior liens that are unsupported by any equity in a property can be stripped off and discharged," should be "preserved."[37]

PUP also argues that even if the Restatement applied, PHFA's lien interest was not materially prejudiced by the loan modification. It notes that under section 7.3(b) of

---

[33] PHFA's Br. at 19.

[34] Debtors' Br. at 1, 16–18.

[35] *Amicus Curiae* Brief Filed on Behalf of Philadelphia Unemployment Project ("PUP") (Doc. No. 16). PUP, a non-profit membership organization, advocates on behalf of low-income or unemployed Philadelphia homeowners facing mortgage foreclosure to help them remain in their homes with affordable mortgage payments. *Id.* at 1.

[36] PUP's Br. at 1–2.

[37] *Id.* at 2.

10

the Restatement, an extension of the mortgage maturity date does not normally prejudice the junior lien interest, but an increase in the interest rate or in the principal balance does.[38] It also cites a case in another jurisdiction where the court found there was no prejudice to the junior lien interest because the loan modification extended the repayment period, reduced the monthly payments, did not raise the interest rate and did not advance additional funds to the borrower. See Bayview Loan Servicing, LLC v. Vasko, 102 N.E.3d 1204, 1209 (Ohio Ct. App. 2018).[39] It argues that these factors are present in this case.

Finally, PUP argues that even if PHFA's lien was materially impaired or prejudiced by the modification to the first mortgage, the Bankruptcy Court's decision still should stand. It maintains that the plain language of the recorded senior mortgage document provided notice to subsequent lienholders that the mortgage loan terms, including principal balance, maturity date and interest rate, may be modified.[40] PUP points to language in section 9 of the mortgage document, which states that in the event the Debtors fail to meet their obligations under the mortgage, any amounts spent by the lender to protect its interest in the property, such as legal fees, "shall become additional debt of Borrower secured by" the mortgage and payable with interest, meaning that the principal balance of the loan could be increased. It also points to language in section 12 of the mortgage document, which provides that "[e]xtension of the time for payment or modification of amortization of the sums secured by this Security Instrument . . . shall not

---

[38] See Restatement (Third) of Property (Mortgages) § 7.3(b), cmt. c., and Illus. 10.

[39] PUP's Br. at 8.

[40] Id. at 3, 4, 7-8.

11

operate to release the liability of Borrower."[41] It then notes that under Restatement sections 7.3(b) and (c), where the senior mortgage document reserves the right to make loan modifications, a loan modification does not alter priority even if a junior lien was materially impaired or prejudiced by the modification. Hence, it argues, even if the Restatement applied, junior lienors were on notice that the terms of the mortgage loan could be extended or otherwise modified and the amortization of the loan, which includes the interest rate and the length of payment, could be changed.[42]

The parties do not dispute the material facts or the state of the law regarding lien priority. They disagree whether we should announce a new rule in Pennsylvania that the equitable subordination doctrine or section 7.3 of the Restatement (Third) of Property (Mortgages) applies.

The parties agree that under Pennsylvania law, a valid mortgage security interest is perfected when recorded and the priority of each lien is based on the order in which it is recorded.[43] "Liens against real property shall have priority over each other on the following basis: (1) Purchase money mortgages, from the time they are delivered to the mortgagee, if they are recorded within ten days after their date; otherwise, from the time they are left for record." 42 Pa. C.S. § 8141(1). They also agree that the purpose of Pennsylvania recording statutes is to place potential creditors on notice of the encumbrance and the extent to which the creditor holds an interest in the collateral and that a recordation acts as "notice" to the universe of the existence of and the basis for the

---

[41] *Id.* at 5–7.

[42] *Id.* at 7.

[43] PHFA's Br. at 7, 8; Debtors' Br. at 1; PUP's Br. at 4.

recordation.[44] Finally, they agree that where there are two sequentially recorded mortgages and the first mortgagee retains its priority position, and the outstanding principal balance on the first mortgage exceeds the fair market value of the collateral, there is no remaining equity in the collateral to support the second mortgagee's secured position.[45]

At the time the bankruptcy proceeding began, the mortgage as modified retained priority over PHFA's second mortgage. The outstanding principal balance on the first mortgage now includes additional sums as a result of the modification. Consequently, the first mortgage lien exceeds the fair market value of the Debtors' property collateral, rendering the value of PHFA's interest at zero.

The issue is whether section 7.3 of the Restatement in particular, or the more general principle of "equitable subordination" applies here in the context of a modified senior mortgage. Acknowledging that no Pennsylvania state or federal court has applied the equitable subordination doctrine or section 7.3 of the Restatement in the context of altering the priority of mortgage liens, PHFA requests that we follow state courts in race-notice jurisdictions that have applied these equitable principles to situations where a senior lienholder materially alters the terms of its mortgage and such modifications prejudicially impact junior lienholders.[46] *See, e.g., Burney v. McLaughlin*, 63 S.W.3d 223, 230, 232-33 (Mo. Ct. App. 2001) (even where the senior mortgagee was permitted under the terms of the contract to modify its mortgage without notice to or the consent of a junior

---

[44] PHFA's Br. at 8; Debtors' Br. at 1; PUP's Br. at 4–5.

[45] PHFA's Br. at 7, 12; Debtors' Br. at 2.

[46] PHFA's Br. at 8–11; PHFA's Reply Br. at 5 n.5.

13

creditor, where the modifications that increased the interest rate and added appraisal, loan-term extension and renewal fees materially impaired the interests of a junior creditor, the court applied section 7.3 of the Restatement and subordinated the modifications to the junior lienor's interests); *Shultis v. Woodstock Land Dev. Assocs.*, 594 N.Y.S.2d 890, 892 (N.Y. App. Div. 1993) (noting long line of New York state cases applying equitable subordination doctrine to hold that modifications to senior mortgage of increased interest rate and loan-term extension required junior lienor's consent); *Lennar Ne. Partners v. Buice*, 57 Cal. Rptr. 2d 1576, 1585 (1996) (noting California state court cases applying equitable subordination doctrine to find that modification to a senior deed of trust that increased the interest rate and the principal balance with additional advances substantially impaired the junior lienholder's rights and security, and to hold that priority of senior creditor's modification was to be re-ordered).

These state decisions have no bearing on what the Pennsylvania law is or should be. It is our role to apply Pennsylvania law, not create it. Hence, we decline to follow these decisions of other state courts.

When interpreting a Pennsylvania state statute and there is no decision from the Pennsylvania Supreme Court directly on point, a federal court must predict how that Court would resolve the issue. *Montgomery Cty., Pa. v. MERSCORP Inc.*, 795 F.3d 372, 376 (3d Cir. 2015) (quoting *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006)). To aid its decision, the federal court may consider opinions of Pennsylvania's intermediate courts, "policies underlying applicable legal doctrine, current trends in the law and decisions of other courts." *Id.* (quoting *City of Erie, Pa. v. Guar. Nat. Ins. Co.*, 109 F.3d 156, 160 (3d Cir. 1997)).

Although it acknowledges that the *Newcrete* court declined to apply the equitable subordination doctrine, PHFA argues that the court's decision does not mean that Pennsylvania courts have "repudiated the doctrine in its totality."[47] It posits that the unique facts and context of that case involving the contractual relationship between a city and a related party made it unsuitable for application of those principles. It argues that this case, in contrast, is an appropriate one in which to apply the equitable subordination doctrine. It contends that a lack of jurisprudence should not "constrain" the Bankruptcy Court from applying the equitable subordination doctrine or the Restatement to this case.[48]

In declining to apply the equitable subordination doctrine, the Commonwealth Court in *Newcrete* recognized that Pennsylvania law allows its application in only two contexts: (1) to reorder creditors' liens before distribution in federal bankruptcy proceedings to remedy the inequity caused when a company insider obtains a priority position in bankruptcy over outside creditors through inequitable conduct; and (2) when a party has satisfied an encumbrance, to allow it to assume the same priority position as the holder of the prior encumbrance to prevent unjust enrichment. *Newcrete*, 37 A.3d at 15 (citations omitted). Because the claims in *Newcrete* did not arise under either of these circumstances, the court declined to apply the doctrine in a new context. *Newcrete*, 37 A.3d at 15.

In declining to apply the equitable subordination doctrine or section 7.3 of the Restatement, the Bankruptcy Court applied Pennsylvania law. The Pennsylvania

---

[47] PHFA's Reply Br. at 6–7.

[48] *Id.* at 6-8.

Supreme Court has not adopted either rule. When asked to adopt the equitable subordination doctrine, the Commonwealth Court declined. Significantly, it declared that it was not the law of Pennsylvania. Therefore, we conclude that the Bankruptcy Court, in applying Pennsylvania law and declining to adopt a new rule, did not commit legal error.

### Conclusion

The Bankruptcy Court correctly declined to apply the equitable subordination doctrine or section 7.3 of the Restatement. Therefore, the court's November 30, 2018 order is affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID G. HAMILTON and<br>ALEXANDRA L. HAMILTON | : <br> : <br> : | CIVIL ACTION<br>NO. 18-5417 |
| v. | : <br> : | (Bankr. No. 16-18326)<br>(Adversary No. 17-00199) |
| PENNSYLVANIA HOUSING FINANCE<br>AGENCY, Homeowners Emergency<br>Mortgage Assistance Program | : <br> : <br> : | |

### ORDER

**NOW**, this 5th day of March, 2020, upon consideration of the briefs of the parties and after review of the record, it is **ORDERED** that the Order of the Bankruptcy Court dated November 30, 2018, is **AFFIRMED**.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.